St. Louis, Iron Mountain & Southern Railway Company *v.* Wood.

Opinion delivered June 5, 1911.

1. Carrier—freight—damage caused by act of God.—A flood that washes away a railroad track is an act of God within the exception to the carrier's liability as an insurer of freight in his hands for transportation. (Page 366.)

2. Same—diversion of freight—estoppel.—Where a shipper of cattle, after being advised of the conditions that made it impossible for the carrier to deliver the cattle at the destination mentioned in the contract, assented to a change of destination, he will be estopped to claim any damages occasioned by such change. (Page 367.)

3. Judgment—consent.—Where a carrier, being sued for an overcharge of freight which, according to the testimony, amounted to $55, offered to confess judgment for $62.84, judgment will be entered for the latter sum. (Page 367.)

Appeal from Marion Circuit Court; *Brice B. Hudgins,* Judge; affirmed with modification.

STATEMENT BY THE COURT.

The appellees sued appellant, alleging that appellant entered into a contract with them to deliver a carload of cattle at Kansas City, Mo., to their consignee, the National Stock Commission; that, instead, appellant delivered the cattle to the same consignee at East St. Louis, Ill.; that by reason of this diversion from Kansas City to St. Louis appellant failed to perform its contract, and thereby damaged appellees as follows: $55 additional freight charge, $300 difference in market price between Kansas City and St. Louis, and $4 for feed.

The appellant denied the allegations of the complaint as to the overcharge in freight. It admitted that the car of cattle was diverted in shipment from Kansas City to St. Louis for the foi-

lowing reason, to-wit: "That when defendant's car reached Aurora, Mo., *en route* to Kansas City, it was ascertained that on account of washouts and the floods along its line it would be impossible for the defendant to get said car into Kansas City for several days. That plaintiffs, to avoid delay, allowed the defendant and agreed for the defendant to transfer said car of cattle to the Frisco Railroad for shipment to St. Louis." Appellant set up that the failure on its part to deliver the cattle according to contract to Kansas City was on account of an act of God, and that appellees were estopped from claiming any damages, if there were any, because after the washout on its road they consented to the transfer of the car of cattle from appellant's road to the Frisco.

The appellant denies that there was any unreasonable delay, or that any damages accrued to appellees by reason of the diverted shipment.

The conductor having in charge the train on which appellee's cattle were shipped testified as follows:

"I remember having a car of cattle for Woods Brothers on that date. We took that car of cattle to Crane, Mo., 96 miles. When I arrived at Crickett, the red board was pulled on me to stop. When I stopped and went in, I found two messages, one for me and one for Mr. Woods. The messages were the same. They read as follows:

"10:30 A. M. Cotter, Ark., 7-11-09. Conductor 254, Crickett, Ark. Advise man in charge of car cattle that all Kansas City lines are washed out, and ask him if he will consign cattle to St. Louis, and we will deliver to Frisco at Aurora. If not, will have to unload him at Crickett. J. W. D."

I handed it to him, and he asked me what it was, and I then read this message to him, and asked him what he wanted to do, and he said he would transfer to Aurora and go to St. Louis. I told him to give me a message to that effect then, and he asked me to write it for him, and he signed it. I wrote the message at his request and he signed it."

The message he sent reads: "J. W. D.: I will take my cattle to St. Louis. W. M. Woods, Stockman."

The roadmaster on the Joplin division of the Missouri Pacific testified that no trains passed over the track used by appellant's

trains from Aurora to Kansas City for about one week, on account of a washout.  The Maridacene River washed out the railroad track between Joplin and Kansas City, Mo., so that appellees had to transfer to the Frisco for St. Louis.  The telegram says: "All lines washed out."  The way bill contained a statement showing that the cattle were shipped over Frisco to St. Louis, on account of high water in Kansas City."  Witness said this was a mistake in copying the telegram by the agent.  He should have written: "All lines washed out."

One of the appellees testified that "on account of this car being shipped to St. Louis, instead of Kansas City," appellees "had to pay out $55 for overcharges."  This testimony was not controverted by appellant.

*W. E. Hemingway, E. B. Kinsworthy, Horton & South* and *James H. Stevenson,* for appellant.

1.  A common carrier cannot be held liable for loss or damage to goods for which it would otherwise be responsible, where the loss or damage is caused by the act of God.   1 Hutch. Carr. § 265; 35 Ark. 402, 408; 47 Ark. 97, 103.   As to what is included in the term "act of God," see 1 Hutch. Carr. § § 270, 271, 282; Anderson's Law Dict. 23; 1 Words & Phrases, 118; 42 Ga. 443; 162 Ill. 545; 35 L. R. A. 356; 147 Pa. St. 343, 14 L. R. A. 242; 91 Ala. 455, 11 L. R. A. 619; 22 Ill. App. 159; 23 Fla. 183. When an act of God is relied on and shown, the burden of proof is on the plaintiff, who must show that the carrier was guilty of some act of negligence which enhanced the injury caused by the act of God.   77 U. S. 176; 89 Mo. 349.

2.  Appellee assented to the change of route, and the diversion to St. Louis, and therefore cannot claim damages by reason thereof.

No brief filed for the appellees.

WOOD, J., (after stating the facts).  First.  The appellees cannot recover for the following reasons:  (1) The undisputed evidence shows that appellant could not perform its contract to transport the cattle to Kansas City because of an act of God. The flood that washed away appellant's track was an act of God within the exception to the carrier's liability as an insurer of freight in his hands for transportation.  *Packard* v. *Taylor,* 35

Ark. 402; *Little Rock, M. R. & T. Ry. Co.* v. *Talbot,* 47 Ark. 97. (2) The undisputed evidence shows that appellees, after being advised of the conditions that made it impossible for appellant to deliver the cattle to Kansas City under the contract, assented to the change of route and the diversion of the shipment to the consignee at St. Louis, instead of Kansas City. Appellees are therefore estopped from claiming any damages that may have been occasioned by reason of such change in the shipment.

Second. The testimony shows that there was an overcharge in the freight that appellees had to pay of $55. The appellant offered to confess judgment for the sum of $62.84. The appellees should have judgment for that sum. The judgment will be modified and affirmed for that amount, and as to the residue will be reversed and dismissed.