ARKANSAS LAND & LUMBER COMPANY *v.* COOK.

Opinion delivered February 19, 1923.

1. MASTER AND SERVANT—AUTHORITY OF FOREMAN.—A member of a section crew, occupying his regular place on a motor car while riding home from work, is as much under authority of the foreman of the crew as when actually at work on the tracks.

2. MASTER AND SERVANT—INSTRUCTION AS TO LIABILITY FOR INJURY TO SERVANT ON MOTOR CAR.—In an action by a section man for injuries received while returning from work on a motor car, where the evidence showed that he was a member of a crew which worked under a foreman, an instruction authorizing recovery if the jury found that plaintiff was in defendant's employ, and was working under its foreman's orders, and was injured on account of defendant's negligence, was not objectionable on the ground that there was no evidence that he was working under the orders of the foreman, or was injured by reason of obeying any order of his foreman.

3. TRIAL—INSTRUCTION—ASSUMING NEGLIGENCE OF MASTER.—In an action by a section man for injuries received while returning from work on the defendant company's motor-car, an instruction that if the evidence showed that he was injured on account of the company's negligence the jury should find for him did not assume that defendant was negligent.

4. MASTER AND SERVANT—DUTY TO FURNISH SAFE PLACE.—In an action by a section man for injuries received while returning from work on a motor-car which jumped the track, where there was evidence that the ties were rotten, that the rails had spread because spikes had come out of them, and that there were low joints, an instruction that it was the duty of defendant to exercise ordinary care to see that its motor car and tracks were kept in a reasonably safe condition, and that this duty required defendant to make reasonable inspection, was not objectionable on the ground that there was no evidence of failure to make an inspection, and that the plaintiff knew of the condition, as it was not his duty to make inspection.

5. DAMAGES—INSTRUCTION AS TO PERMANENT INJURY.—Where there was medical testimony tending to prove that plaintiff's injuries were permanent, an instruction to assess such damages as would compensate plaintiff for loss from diminished earning capacity was not erroneous.

6. EVIDENCE—EXPERT OPINION.—A medical witness may testify as to the probable effects of an injury or other conditions observed by him in his examination and treatment of a patient.

7. RELEASE—INSTRUCTION.—In a personal injury action, where the evidence as to whether plaintiff signed a release was conflicting, an instruction that if plaintiff did not sign the release nor authorize another to sign it for him, it would be no defense, was not erroneous.

8. MASTER AND SERVANT—NEGLIGENCE CONCURRING WITH ACT OF GOD.—In an action by a section hand for injuries received when a motor-car on which he was riding jumped the track, which was covered with sleet, an instruction that no one can recover for injuries caused by the act of God alone, but that if the act of God, coupled with the act of man, causes injury, a recovery is not barred by the act of God, was not error.

9. DAMAGES—WHEN NOT EXCESSIVE.—Where a section man, injured when defendant's motor-car jumped the track, was permanently injured in his hip and had a limp in his walk, could not lift heavy loads, and his spermatic cord was enlarged and became hardened, a verdict of $1,000 damages was not excessive.

10. MASTER AND SERVANT—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a finding that the defendant was guilty of negligence causing plaintiff's injuries.

Appeal from Calhoun Circuit Court; *C. W. Smith,* Judge; affirmed.

STATEMENT OF FACTS.

Granville Cook sued the Arkansas Land & Lumber Company to recover damages for physical injuries received by him by being negligently thrown from the front end of a motor-car on which he was riding while in the employment of said company. The defendant denied that the plaintiff was injured on account of its negligence.

On the 12th day of January, 1921, Granville Cook was injured by being thrown from a motor-car of the Arkansas Land & Lumber Company while returning from work. The defendant owns and operates a railroad from its mill to a point something like twenty-five or thirty miles in the country. The company used a motor-car with a trailer attached to it to carry its section crew and bridge crew to and from their work. Each crew worked under the direction of a foreman, and both together had fourteen men. The section crew rode on the motor-car, and the bridge crew on the trailer attached to it. The section foreman usually drove the motor-car with the trailer attached, but on the day in question the car was driven by the assistant section foreman. It had been sleeting on that day, and this made the track slick. The entire crew of fourteen men started to the mill on the motor-car and trailer. Granville Cook was riding on the right-hand corner of the motor-car, which was his usual and customary place to ride. As the car approached a sharp curve, the driver cut off the gas in order to check the speed of the car. Then he turned the gas on again, and the car ran off of the track on the inside of the curve. Its speed was about twenty-five miles an hour when it left the rails, and the car then ran along on the ties until it fell over. The plaintiff was pinned under the car and was severely injured. There was a low joint where the car ran off the rails. The surface under the rails and ties had become soft, and the heavy loads drawn over the rails had caused them to sink down into the earth. The ties had become rotten to an extent, and this caused the spikes

which fastened the rails to the ties to become loose and let the rails spread. The railroad was used for hauling the logs of the defendant. The customary speed at which the motor-car was run in carrying the crew to and from work was twelve miles an hour. Some of the crew testified that there was no slacking of the speed of the car when the car ran into the curve, and that it was going at the rate of twenty-five miles an hour.

According to the evidence for the defendant, the track was in good condition and the ties were sound. There were no low joints in the rails, and the rails had not spread. The motor-car had been inspected four or five days before the accident, and was in good condition. It had been in use about six months. The front axle of the car was not bent, as testified to by some of the plaintiff's witnesses.

The assistant section foreman, who was driving the car at the time of the accident, was also a witness for the defendant. According to his testimony, the track was covered with sleet, and was very slick. When he got to the point of the curve he threw the gas off, and when he thought he was safe he threw the gas back on to hold his speed. When he put the gas on the car again, it jumped the track. He testified that the sleet was hitting him in the face when he turned the gas on. He said that he turned the gas on in the ordinary and usual way, but because of the sleet hitting him in the face he might have put on too much gas.

Other evidence will be stated or referred to in the opinion.

The jury returned a verdict in favor of the plaintiff for $1,000, and the defendant has appealed.

*Henry Berger* and *Mehaffy, Donham & Mehaffy,* for appellant.

*D. D. Glover* and *D. M. Halbert,* for appellee.

HART, J., (after stating the facts). The first assignment of error is that the judgment should be reversed

because the court gave instruction No. 1, over the objection of the defendant. The instruction is as follows:

"The court instructs the jury that, if you find from a preponderance of the evidence in this case that the plaintiff was in the employ of the defendant company and was working for it under the orders and directions of its foreman, and you find from the evidence that he was in the exercise of ordinary care for his own protection, and you find from the evidence that he had not assumed the risk, and you find from the evidence that he was injured on account of the negligence of the defendant company, its agents, servants or employees, as alleged in his complaint, it will be your duty and you are instructed to find for the plaintiff in this case."

Counsel specifically objected to the instruction because there was no evidence to the effect that the plaintiff was working under the orders and directions of his foreman, or that he was injured by reason of obeying any order or direction of his foreman.

We do not think this objection is tenable. The evidence shows that the plaintiff was a member of a section crew which worked under a foreman. He necessarily gave them orders about doing their work, and the instruction simply means that, at the time the plaintiff was injured, he was working under his foreman. It was true he was coming home from his work on a motor-car, but this was his usual and customary way of going to and from work. He had a regular place on the motor-car in which to sit, and he was occupying this place at the time the car ran off of the track. He was as much under the authority of the foreman at this time as he was when he was actually at work on the tracks. *Arkadelphia Lumber Co.* v. *Smith*, 78 Ark. 509; *Gilkey* v. *La. & Ark. Ry. Co.*, 103 Ark. 231. The instruction did not mean to submit to the jury that the plaintiff was injured while doing a particular act at the command of his foreman. This interpretation is negatived by all the testimony in the case. There is no dispute whatever about how the

accident occurred.  The only dispute is about the defective condition of the track and the negligence of the driver of the motor-car.  We do not think that the jury could have been in anywise misled by this instruction.

The court gave, at the request of the defendant, instructions covering every phase of the case presented by the evidence.

Again, it is insisted that the instruction assumes that the defendant was negligent.  We do not think so.  The instruction plainly predicates the right of the plaintiff to recover upon a finding by the jury of negligence as alleged in the complaint.

It is next insisted that the court erred in giving instruction No. 7, which reads as follows:

"You are instructed that it was the duty of the defendant company to exercise ordinary care to see that its motor-car and its track and roadbed were kept in a reasonably safe condition, and you are further instructed that this duty that rested on the defendant company required it to make reasonable inspection to see that they were kept in a reasonably safe condition."

It is first contended that there is no evidence to the effect that the defendant failed to make an inspection, and that the plaintiff knew as much about the condition of the track and roadbed as any one.  The evidence for the plaintiff to the effect that the ties were rotten and that the rails had spread because the spikes had come out of them was evidence tending to show that the defendant had not inspected its tracks.  Then, too, there was evidence of low joints in the rails which was caused by heavy loads being hauled over the rails and pressing them down into the ground, without a proper surfacing of the tracks.  This evidence was sufficient to constitute negligence on the part of the defendant; for it was its duty to exercise ordinary care in furnishing the plaintiff a safe place in which to work.  It is true that the plaintiff was a section hand, and rode

over the rails every day, but this did not make it his duty to inspect the rails and the roadbed for defects in them. Therefore we hold this assignment of error is not well taken.

The next assignment of error is that the court erred in giving instruction No. 8, which reads as follows:

"The court instructs the jury that, if you find for the plaintiff, from the evidence in this case, you will assess his damages at such a sum as will compensate him for the injuries sustained, if any; the physical pain and mental anguish suffered and endured by him in the past, if any, by reason of the said injuries; his loss of time, if any; and his pecuniary loss from diminished capacity for earning money, if any; and from these, as proven by the evidence, assess such damages as will fairly compensate him for the injuries received."

Counsel for appellant claim that there is not sufficient evidence in the record upon which to predicate an instruction for damages for permanent injuries, and rely upon the case of *St. L. I. M. & S. Ry. Co.* v. *Bird,* 106 Ark. 177, to support this view.

We do not think that the facts in the two cases are similar. In that case one of the physicians, in testifying whether or not the injury was permanent, said that there was a probability that it was permanent, and that it was just about equally balanced in his mind whether or not the injury was permanent. Another physician testified that it was questionable whether the injured person would ever get well, and that, looking at his condition as a matter of probability, it was discouraging to him as a physician. The court held the testimony to be insufficient, and said that, unless the testimony tended to show with reasonable certainty that the injury was permanent, the court should not permit the jury to assess any damages for permanent injuries.

Here there is something more than the balancing of probabilities by the physician. Dr. Williams was a

graduate physician and surgeon, and had been practicing his profession for over forty years. He testified that he had examined the plaintiff several times, and described minutely the result of his several examinations. Then, in response to a direct question, he testified that the plaintiff had a permanent injury of the hip and possibly of the soft part of the pelvis. Dr. Williams gave this as his positive opinion, based upon his personal examination of the plaintiff upon several different occasions, and, as above stated, described with particularity the result of his examination.

But it is contended that Dr. Williams should not have been allowed to give his opinion of the permanency of the plaintiff's injuries. We cannot agree with counsel in this contention. A medical witness may be permitted to state the probable effects of an injury or other conditions observed by him in his examination and treatment of a patient. *Mo. & N. Ark. Rd. Co.* v. *Collins,* 106 Ark. 353; *K. C. So. Ry. Co.* v. *Cobb,* 118 Ark. 569; and *Hines* v. *Patterson,* 146 Ark. 367.

It is next insisted that the court erred in giving instruction No. 9, which is as follows:

"You are instructed that, if you find from the evidence in this case that the plaintiff did not sign the release pleaded in this case, or authorize any one else to sign it for him, or cash it, it would be no defense in this case."

It is claimed that there is no evidence upon which to base this instruction. It is true that the evidence for the defendant tended to show that it settled with the plaintiff, and that he signed a release of all claims against the defendant with full knowledge of its purport. It was also shown by the defendant that the draft which was issued to G. C. Cook for $4.50 in settlement of his claim was cashed by the Bank of Malvern and paid by the drawee in due course of business.

It cannot be said, however, that this testimony is undisputed. The plaintiff denied in positive terms that

he signed the release, cashed the draft, or made any settlement whatever with the company. He testified further that he had never heard of any settlement until the day before he testified. This was testimony of a substantive character tending to contradict the evidence of the defendant on this point, and warranted the court in giving the instruction now complained of. The credibility of the witnesses was for the jury, and we hold that this assignment of error is not well taken.

It is also insisted that the court erred in giving instruction No. 6, which reads as follows:

"You are instructed that no one can recover damages for injuries caused by the act of God alone, but you are further instructed that if the act of God, coupled with the negligence of man, causes injury or damage to persons or property, a recovery is not barred by the act of God."

This court has held that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the act of God, the defendant is responsible if his negligence is one of the proximate causes of the damage. *St. L. S. W. Ry. Co.* v. *Mackey,* 95 Ark. 297, and *St. L. I. M. & S. Ry. Co.* v. *Steel,* 129 Ark. 520.

It is contended, however, by counsel for the defendant that the instruction is erroneous because it made the defendant responsible if the jury should find that its negligence, concurring with the act of God only in a remote degree, caused the injury. We do not think so. As stated in the above opinion, the act of God which excuses must be not only the proximate cause, but the sole cause. We think, under the language of the instruction, the concurring negligence of the defendant, with the act of God as an efficient and co-operating cause, was submitted to the jury under the principles of law above announced.

It is next insisted that the verdict of $1,000 is excessive. According to the evidence of the plaintiff, he

was permanently injured in his hip, and had a limp in his walk at the time of the trial. He cannot lift heavy loads, and his spermatic cord has been enlarged and become hardened as a result of his injury.

It is true that, according to the evidence for the defendant, he is not permanently injured, but the jury has settled the conflict between the witnesses on this point in favor of the plaintiff. Assuming the evidence for the plaintiff, on the character and extent of his injuries, to be true, it cannot be said that the verdict is excessive.

According to the evidence for the plaintiff, he was going home from work in a motor-car of the defendant, and was still in its service. *Arkadelphia Lbr. Co.* v. *Smith,* 78 Ark. 505, and *Gilkey* v. *La. & Ark. Ry. Co.,* 103 Ark. 231. Hence it was the duty of the defendant to exercise ordinary care for the safety of the plaintiff while carrying him to and from his work, and it was also its duty to make reasonable inspection to see that the motor-car and track were in safe condition.

Bearing this in mind, it is readily apparent that, under the evidence adduced for the plaintiff, the jury was warranted in finding the defendant guilty of negligence in one or both of these respects, as alleged in the complaint.

It follows that the judgment must be affirmed.