Roger T. BENSON *v.* TEMPLE INLAND FOREST
PRODUCTS CORPORATION

96-1369                                942 S.W.2d 252

Supreme Court of Arkansas
Opinion delivered April 21, 1997

*Taylor, Halliburton, Ledbetter & Caldwell,* by: *Mark Ledbetter;* and *Thomas G. Montgomery,* for appellant/cross-appellee.

*Rieves & Mayton,* by: *David S. Wilson, III,* for appellee/cross-appellant.

RAY THORNTON, Justice. In the early morning of June 24, 1992, appellant, Roger Benson, was injured while helping unload his coworker's truck. When he released a rubber strap securing a tarpaulin that protected the load from the weather, a gypsum board weighing about forty pounds fell from the truck and struck him on the neck. Mr. Benson sued Temple Inland Forest Products, claiming that Temple's negligence in loading the truck caused his injuries. Temple denied negligence, and contended that the injuries were caused by Mr. Benson's own negligence, or the negligence of his coworker, Ed Felks.

Following the presentation of evidence, the trial judge instructed the jury concerning the meaning of the term "proximate cause," but declined to instruct the jury on the concept of intervening cause or on the concept of concurring cause. The jury returned a general verdict in favor of Temple. Mr. Benson's motion for a new trial was denied, and he appeals, alleging error in denying an instruction on concurring cause. Temple cross-appeals on the condition that if this court decides that an instruction on concurring cause was required, the trial court should also have given an instruction on intervening cause. We conclude that both instructions should have been given, and we reverse and remand the case for a new trial.

On June 23, 1992, Mr. Benson and Mr. Felks, employees of a trucking company, met at Temple's facility in West Memphis to pick up their trucks, which had been loaded with gypsum wall boards. The open-flatbed trailers were eight feet wide, and the four-feet-by-eight-feet wall boards were stacked flat on the trail-

ers. Each load was covered with a tarpaulin to prevent weather damage to the wall boards. However, a small tarp was used on Mr. Felks's trailer, leaving some of the cargo unprotected from weather. To avoid weather damage, Temple placed a four-by-eight gypsum board on its side on the edge of the trailer to protect the exposed load from the weather; and this extra board was held in place by the tarp, which also covered most of the extra board. The tarp was secured to the trailer by rubber cords, and the load straps were then used to secure the entire load.

Temple asserted that when the trailer was moved out of the loading bay, all these tarp cords were attached to the rub rail on the side of the flatbed trailer. Before starting their trip from West Memphis to Georgia, Mr. Benson and Mr. Felks were to inspect their respective loads, tightening the cargo straps and adding additional rubber cords if necessary to further secure the tarps.

Upon arrival in Georgia at the point of delivery, the drivers prepared for unloading by removing the load straps. After a short nap they were awakened by the person in charge of the facility. Mr. Benson began to help with the removal of the tarp from Mr. Felks's truck, and he had to reach under the flatbed of the truck to disconnect a rubber cord. The four-by-eight extra gypsum board fell and injured Mr. Benson's neck.

At trial, Temple introduced evidence that the rubber cords they had fastened to the tarp were attached to the rub rail on the side of the flatbed and that it was not necessary to reach under the trailer to disconnect those cords. This evidence suggested that Mr. Felks or someone else must have placed the cord ends under the trailer bed, making it necessary for the person removing the tarp to place his head and shoulders in an exposed position. Temple also suggested that Mr. Felks, who had been injured on a previous occasion when a similar board fell on his foot, had a duty to warn Mr. Benson that there was a protective board under the tarp which might fall when the tarp was released.

It is clear to us that these factual circumstances raise questions whether there were concurring acts of negligence, or whether there were intervening and superseding acts of negligence. The trial court should have given the jury such instruction

as provided by AMI Civ. 3d 502 and 503. AMI Civ. 3d 502 accurately states the law relating to concurring negligence as follows:

> When the negligent acts or omissions of two or more persons work together as proximate causes of damage to another, each of those persons may be found to be liable. This is true regardless of the relative degree of fault between them. If you find that negligence of the defendant proximately caused damage to the plaintiff, it is not a defense that some other person may also have been to blame.

AMI Civ. 3d 503, which correctly presents the law regarding intervening or superseding acts of negligence, provides as follows:

> _____ contends and has the burden of proving that following any act or omission on his part an event intervened which in itself caused damage completely independent of his conduct. If you so find, then his act or omission was not a proximate cause of any damage resulting from the intervening event.

Under our prior decisions, we determined that it is reversible error for a trial judge to refuse to give a requested specific instruction, even if his general instruction may touch on the issue, and stated the following:

> Even if the court's general instructions could be said technically to have covered the matter in a general way, it is error to refuse to give a specific instruction correctly and clearly applying the law to the facts of the case, even though the law in a general way is covered by the charge given, unless it appears that prejudice has not resulted.

_Beevers v. Miller,_ 242 Ark. 541, 547, 414 S.W.2d 603, 607 (1967). Our opinion in _Beevers_ reflects our long-held proposition that parties are entitled to specific jury instructions on causation issues:

> [S]till the defendants were entitled to a specific instruction, telling the jury that if the injury occurred from some cause other than that alleged in the complaint, or that if the deceased was guilty of negligence in the particular mentioned which contributed to the injury, there could be no recovery.

_Id._ at 549, 414 S.W.2d at 608 (quoting _Prescott & N.W. Ry. Co. v. Weld,_ 80 Ark. 454, 97 S.W. 452 (1906)).

■ While a trial court is not required to give every correct instruction offered when the instructions given explicitly, clearly, fully, and fairly cover the matter requested, the trial court's refusal of a proper instruction will result in reversal, unless it affirmatively appears that no prejudice resulted. *Id.*

■ The circumstances of this case presented a jury question whether Temple's negligence, if any, was a proximate cause of Mr. Benson's injury. However, they also presented a jury question as to whether Mr. Felks's or Mr. Benson's actions were a concurring, intervening, or superseding act to cause the injury. In order to provide the jury with a clear understanding of the governing legal principles, all three instructions should have been given to the jury. We cannot determine that the failure to give these requested instructions did not result in prejudice.

Accordingly, we reverse and remand for a new trial based on this opinion.